Silas J. **ALEXANDER**, et al., Plaintiffs-Appellants,

v.

**CHICAGO PARK DISTRICT**, et al., Defendants-Appellees.

No. 84–2995.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1985.

Decided Sept. 19, 1985.

As Amended on Denial of Rehearing Nov. 13, 1985.

Barbara J. Revak, Chicago, Ill., for plaintiffs-appellants.

Jack J. Carriglio, Foran, Wiss & Schultz, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and WRIGHT, Senior Circuit Judge.*

EUGENE A. WRIGHT, Senior Circuit Judge.

This lengthy litigation alleging discrimination in resources allocation and employment by the Chicago Park District during the years 1970 through 1980 raises these issues:

---

* The Honorable Eugene A. Wright, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

1) Did the court err in dismissing three counts of the amended complaint under res judicata and collateral estoppel?

2) Did it err in dismissing the remaining three counts of the amended complaint for failure to state a cause of action under 42 U.S.C. § 1983?

3) Did it err in denying plaintiffs' recusal motions?

## FACTS

The procedural sequence in this case is convoluted and will be simplified here to include only pertinent facts.

In 1979, Alexander filed a class action on behalf of all Black, Hispanic and poor Chicago residents alleging racial discrimination by the Chicago Park District and its attorneys, superintendent and past and present commissioners (collectively District). Personal liability is sought against the individual defendants.

In 1982, we affirmed the court's denial of plaintiffs' motion for a preliminary injunction to restrain the budgetary and fund allocation actions of the District. *Alexander v. Chicago Park District,* 709 F.2d 463 (7th Cir.1983). Plaintiffs then filed two unsuccessful motions to disqualify Judge Leighton and followed these with a mandamus petition which we denied on February 8, 1983. Alexander's petition for an en banc rehearing on this mandamus petition was denied on April 4, 1983.

In 1983, the district court denied plaintiffs' motion for class notification under FED.R.CIV.P. 23(c)(2). It determined that class members would not be prejudiced because if the defendants prevailed, the class members without notice would not be bound.

Later in 1983, the district court consolidated this case with another class action, *Midwest Community Council, Inc. v. Chicago Park District (Midwest),* No. 79 C 3187 (N.D.Ill. Sept. 16, 1983) (unpublished), which raised similar discriminatory recreational resources allocation claims against the District. The *Midwest* action sought only equitable relief.

In count I of the second amended complaint, plaintiffs alleged that defendants administered the Chicago Park District in a racially discriminatory manner, so that parks located in predominantly Black communities were allocated less park resources, including state and federal funds, resulting in injuries and disparities in equipment and services. This count was brought under 42 U.S.C. § 1983.

Relying on the Due Process and Equal Protection clauses of the United States and Illinois Constitutions and on § 1983, plaintiffs brought employment discrimination claims in counts II and III. Count II charged that a civil service examination administered by the Park Service was not (1) job-related, (2) culturally, racially and sexually unbiased, and (3) objectively administered.

Count III dealt with hiring, assigning and promoting employees based on race and ethnicity. This count also alleged a variance in numbers of administrative, recreational, support and maintenance staff between parks in white and non-white communities. This in turn was alleged to have forced certain plaintiffs to resign from park employ because of limited job opportunities.

Count IV, brought under § 1983, alleges personal injuries to several plaintiffs resulting from these racially discriminatory practices. A fifth count was subsequently deleted.

The consolidated cases were tried in 1983. The court severed Alexander's employment discrimination and tort claims. During trial, Alexander filed a third amended complaint, similar to the second in the relevant allegations.

After a three-month trial, the jury returned a verdict for the defendants on the resources allocation claims and judgment was entered against plaintiffs on count I in the *Alexander* suit. Because the jury heard the *Midwest* claims in an advisory capacity only, the court subsequently entered judgment for the District, incorporating its own findings of fact and conclusions of law. No appeal was taken from the *Midwest* judgment.

Defendants moved for summary judgment contending that the jury verdict on count I was res judicata on all claims in counts II, III and IV. In an order dated September 23, 1983, the court granted summary judgment on count IV, reasoning that the underlying basis of the tort claim was discriminatory resources allocation causing dangerous conditions in black neighborhood parks. The court granted a partial summary judgment on counts II and III to the extent that discrimination in resource

allocation or administration would not be relitigated. It then dismissed counts II and III under FED.R.CIV.P. 54(b) to allow the parties to appeal.

Alexander did not appeal but filed an amended complaint as authorized in the September 23 order. Count I alleged that the District expended federal funds in a racially and ethnically discriminatory manner in violation of regulations of the Department of Housing and Urban Development and Department of Interior under 42 U.S.C. § 1983.

Count II sought an injunction, reinstatement, back pay and damages under Due Process and Equal Protection Clauses of the United States and Illinois Constitutions and under 42 U.S.C. § 1983. It challenged the civil service examination given by the District on November 1, 1977 for a physical instructor position.

Count III incorporated the allegations of count I that defendants allocated resources to the parks in a discriminatory manner and the allegations of count II concerning the civil service examination. It also was brought under 42 U.S.C. § 1983.

Count IV alleged that the District had a policy of allocating resources and employees on a discriminatory basis in violation of the Due Process and Equal Protection Clauses of the United States and Illinois Constitutions and 42 U.S.C. § 1983. It sought monetary relief for hiring, assignment and payment of personnel on a racially discriminatory basis.

Count V alleged that the District expended federal funds in a discriminatory manner and contrary to federal regulations, resulting in class members being forced to resign from the District's employ. Count VI alleged that the policy of expending federal funds in a discriminatory manner resulted in reduced maintenance, aid and inspections at minority parks, resulting in physical injuries to minority members.

The District moved to dismiss on the grounds of res judicata and that the complaint failed to state a claim under 42 U.S.C. § 1983. The court granted the motion on October 18, 1984, dismissing counts I, V and VI on res judicata grounds and counts II, III and IV for failure to state a claim.

ANALYSIS

**Res Judicata**

Res judicata is a doctrine of repose. "Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if ... conclusiveness did not attend the judgments of such tribunals." *Nevada v. United States*, 463 U.S. 110, 129, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983), quoting *Southern Pacific Railroad v. United States*, 168 U.S. 1, 49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). *See also Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir.1982) (purpose is to reduce costs of litigation).

Under res judicata, or claim preclusion,[1] a prior judgment on the merits bars the same parties or their privies from relitigating all issues which were raised and decided or could have been raised in the prior action. *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 945 (7th Cir.1981); *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir.1982). The doctrine applies in civil rights suits as well. *Lee*, 685 F.2d at 198–99; *Local 1006, A.F.S.C. M.E., AFL–CIO v. Wurf*, 558 F.Supp. 230, 233 (N.D.Ill.1982). *See also Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, ——, 104 S.Ct. 892, 899, 79 L.Ed.2d 56 (1984) (state preclusion law applies in federal § 1983 suit brought subsequent to state suit).

In determining the preclusive effect on the six counts in the fourth amended complaint of the jury's verdict on count I and

---

**1.** Preclusion occurs under two theories: issue preclusion and claim preclusion. Claim preclusion bars relitigation of claims or issues which were or could have been raised in a prior suit on the merits between the same parties or their privies. Plaintiffs' claims are merged in the judgment for plaintiff while judgment for defendant acts to bar any further claims by plaintiff against that defendant. It is usually referred to as res judicata, and that is how we use it. *See Migra v. Warren City School Dist. Bd. of*

*Education*, 465 U.S. 75, ——, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984).

Issue preclusion prevents relitigation of a matter of fact or law that was previously litigated and decided. *See Jones v. City of Alton*, 757 F.2d 878, 879 n. 1 (7th Cir.1985). It is usually referred to as collateral estoppel.

The trial court dealt with both issue and claim preclusion. Because of our decision on claim preclusion, we need not reach the collateral estoppel issue.

the summary judgment on count IV of the third amended complaint, the court analyzed the three threshold requirements of res judicata: (1) identity of parties; (2) identity of causes of action; and (3) a final judgment on the merits. *Lee,* 685 F.2d at 199. *See Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983); *Local 1006,* 558 F.Supp. at 234.

### 1. Identity of Parties

The court found that named plaintiffs in the fourth amended complaint were named also in the third amended complaint and so concerned itself only with the last two requirements. Twenty-seven plaintiffs were named in the third amended complaint. They were named in the fourth amended complaint, with the addition of the Commite Latino. No allegations were made as to the membership of the Commite and no motion for intervention was made. *See* 3B J. Moore, J. Kennedy, *Moore's Federal Practice* ¶ 23.90[2] (2d ed. 1985). The court ignored it as not properly a party to this class action and we agree.

■ On appeal the plaintiffs argue that res judicata was inappropriate because the court refused to require notice to the class. This does not affect application of res judicata against the named plaintiffs. Any preclusive effect against potential class members not notified of the suit is not an issue before us. *See Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522 (7th Cir.1985) (second court decides for itself preclusive effect of first litigation).

### 2. Identity of Causes of Action

The trial court held that counts I of the third and fourth amended complaints were identical. It found that counts V and VI were premised on the same facts, which is sufficient identity for res judicata purposes.

■ A cause of action consists of "a single core of operative facts" which give rise to a remedy. *Mandarino v. Pollard,* 718 F.2d 845, 849 (7th Cir.1983) (operative facts were employment termination and surrounding circumstances), *cert. denied,* — U.S. ——, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984); *Coward v. Colgate-Palmolive Co.,* 686 F.2d 1230, 1234–35 (7th Cir.1982) (essential fact underlying first and second suit was seniority), *cert. denied,* 460 U.S. 1070,

103 S.Ct. 1526, 75 L.Ed.2d 948 (1983); *Lee,* 685 F.2d at 200 (cause of action consists of single core of operative facts).

Plaintiffs assert that they complain of violations of federal regulations in counts V and VI, charges not made in previous complaints. This argument is to no avail. The essential fact in count I of the third amended complaint was discriminatory fund disbursement. It is the essential fact underlying counts V and VI of the fourth amended complaint.

■ A mere change in the legal theory does not create a new cause of action. *Shadid v. Oklahoma City,* 494 F.2d 1267, 1268 (10th Cir.1974). *See also Harper Plastics,* 657 F.2d at 945 ("An unsuccessful party may not ... frustrate ... res judicata by cloaking the same cause of action in the language of a theory untried in the previous litigation."). Extensive evidence regarding compliance with the regulations was presented at trial.

Plaintiffs argue also that the general jury verdict is insufficient to determine precisely what was found on each issue. This confuses res judicata and collateral estoppel.

They assert that they were precluded from presenting evidence on injuries and deaths at the parks. The injury evidence went only to the issue of damages, not liability.

■ Both of the preceding arguments can be characterized as a challenge to the opportunity to fully and fairly litigate these claims. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Lee,* 685 F.2d at 201. This argument cannot be sustained in view of the three-month jury trial. Plaintiffs had a full and fair opportunity to litigate the issue of fund allocations. *See Jones,* 757 F.2d at 884; *Ohio-Sealy Mattress Mfg. Co. v. Kaplan,* 745 F.2d 441, 451–52 (7th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).

### 3. Finality

The plaintiffs challenged finality on the grounds that the September 23 order was insufficient for rule 54(b) purposes. The district judge did not agree but found that, even if the order was not appealable, it had the requisite finality for res judicata purposes.

Rule 54(b) requires that if a court enters final judgment on fewer than all the claims it must make a determination that there is no just reason for delay and expressly order the entry of judgment. FED.R.CIV.P. 54(b). The September 23 order did not technically comply with Rule 54(b), but it was clear:

> In order to enable the parties to this cause to appeal or cross-appeal, and in conformance with Rule 54(b), FED.R. CIV.P., counts II and III of the Third Amended Complaint are dismissed, subject to the right of plaintiffs to file a Fourth Amended Complaint....

The plaintiffs argue that remarks made by the court at a post-judgment conference indicate that the judgment was not to be considered final. The remarks came upon entry of the order. Because it is clear, and because the parties were explicitly told that the court wanted guidance from an appellate decision, we are convinced that the parties knew of their right to appeal.

The court did say it would certify under 28 U.S.C. § 1292(b) the res judicata effect of the count I verdict on counts II, III and IV. Even though no 28 U.S.C. § 1292(b) certification was entered, this did not make less clear the September 23 order.

Finally, while not expressly determining there was no just reason for delay in the order itself, the judge did determine that an appeal would be in the interest of the public, the court and the plaintiffs. This litigation had been before Judge Leighton for four and one-half years.

Although reluctant to deviate from the strict Rule 54(b) requirements, we have held that less than technical compliance will suffice when neither party is prejudiced by the lack of formality. *Local P-171, Amalgamated Meat Cutters & Butchers v. Thompson Farms Co.*, 642 F.2d 1065, 1072–73 (7th Cir.1981); *accord Equal Employment Opportunity Comm'n v. Delta Air Lines, Inc.*, 578 F.2d 115, 116 (5th Cir.1978). Plaintiffs' prejudice, if any, stems from their choice not to appeal the September 23 order and not from lack of sufficient notice that the order was appealable.

Plaintiffs also challenge the dismissal of count IV of their third amended complaint on res judicata grounds. This issue was appealable as of September 23, 1983. We note that the district court correctly determined this issue.

■ The district court was also correct that the September 23 order was sufficiently final for res judicata purposes even if not appealable. *Lummas Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962), held that judgments not final for § 1291 can be " 'final' in the sense of precluding further litigation [depending on] such factors as the nature of the decision, ... the adequacy of the hearing and the opportunity for review." *Accord O'Reilly v. Malon*, 747 F.2d 820, 822–23 (1st Cir.1984); *Commodity Futures Trading Comm'n v. Board of Trade of City of Chicago*, 701 F.2d 653, 657 (7th Cir.1983); *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1191 (5th Cir.1982), *rev'd on other grounds*, 460 U.S. 1007, 103 S.Ct. 1254, 75 L.Ed.2d 483 (1983).

There is no doubt that two of the three *Lummas Co.* factors have been met here. The jury rendered a verdict only after a protracted trial. *See also Aiello v. City of Wilmington*, 470 F.Supp. 414, 419 (D.Del. 1979), *aff'd*, 623 F.2d 845 (3d Cir.1980) (jury verdict final "in the sense of inalterable" from the date entered).

### Title VII and § 1983

The district court dismissed the remaining counts of the Alexander plaintiffs' complaint on the grounds that Title VII is the exclusive remedy for employment discrimination charges. Under the principle established in *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299 (7th Cir.1985), we reverse.

■ Title VII is not the sole remedy for employment discrimination claims of state employees. *Id.*, slip op. at 5–6. Congress intended to retain preexisting remedies. Only if the right asserted was created by Title VII must it be vindicated through the procedural system set up in that Act. *Accord Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir.1984). *See also Carpenter v. Stephen F. Austin State University*, 706 F.2d 608, 612 n. 1 (5th Cir.1983) (Title VII is remedy

unless specific allegations of constitutional violations); *Rivera v. City of Wichita Falls*, 665 F.2d 531, 534 n. 4 (5th Cir.1982) (when § 1983 used as alternate remedy to Title VII, elements of cause of action are the same); *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir.1980) (same).

We sympathize with defendants' position and note that our holding and that of the Sixth Circuit create the anomalous situation that a federal employee is limited by the administrative procedures of Title VII while state employees are not. Because we interpret what remedies Congress has provided, we rule as we do. Congress may amend Title VII if it so chooses.

Counts II and IV are based on the Fourteenth Amendment's protection against intentional discrimination based on class membership. *Trigg*, slip op. at 2; *Huebschen v. Department of Health and Social Services*, 716 F.2d 1167, 1171 (7th Cir.1983). They survive at this stage of the proceedings.

■ Count III is more problematic. Plaintiffs concede that it is based on statutory violations. Generally, where a statute provides its own comprehensive enforcement scheme, that scheme may not be bypassed by pleading an underlying violation of the statute and bringing suit directly under § 1983. *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981) (Federal Water Pollution Control Act, Marine Protection, Research and Sanctuaries Act); *Smith v. Robinson*, —— U.S. ——, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984) (Education of the Handicapped Act); *Preiser v. Rodriguez*, 411 U.S. 475, 489, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973) (habeas corpus).

Title VII is one of the statutes that may not be bypassed. *Grand American Federal Savings v. Novotny*, 442 U.S. 366, 375–378, 99 S.Ct. 2345, 2350–52, 60 L.Ed.2d 957 (1979) (Title VII may not be bypassed via § 1985(3)). Is Title VI like Title VII in this respect?

We think it is. Title VI provides its own administrative enforcement procedure which would be bypassed by pleading Title VI violations under § 1983. Moreover, the remedies available under Title VI should in some cases be limited to declaratory and injunctive relief. *Guardians Association v. Civil Service Commission*, 463 U.S. 582, 597–598, 103 S.Ct. 3221, 3229–30, 77 L.Ed.2d 866 (1983). This limitation would be lost in the broad grant of a remedy at law or equity available under § 1983.

■ Since Title VI provides its own remedial scheme, we hold that private actions based on Title VI may not be brought under § 1983. See *Guardians Association*, 463 U.S. at 610 n. 3, 103 S.Ct. at 3236 n. 3 (Powell, J., concurring).

**Recusal**

On November 12, 1982, plaintiffs filed disqualification motions against Judge Leighton under 28 U.S.C. §§ 144 and 455(a). The motions were based on statements by the court during the hearing on plaintiffs' motion for a preliminary injunction and findings and conclusions entered in ruling on that motion.

Again we rule against plaintiffs on this issue. Under section 144, bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *United States v. English*, 501 F.2d 1254, 1263 (7th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975). The plaintiffs' affidavits set forth only rumor concerning the administration of the Chicago NAACP 25 years ago.

■ Plaintiffs' insinuations that the trial judge did not vigorously pursue alleged discrimination when he represented the NAACP are not an extrajudicial source of bias. What must stem from an extrajudicial source are facts and information.

Judge Leighton called as a witness Mr. Jones, a former President of the Chicago NAACP whom he had represented 25 years earlier. He indicated surprise that the plaintiffs had not called Jones or deposed him.

Contrary to plaintiffs' assertions, Jones' credibility was not automatically enhanced. The judge specified in denying the recusal

motion that he had not prejudged Jones' testimony. *Cf. Roberts v. Bailar,* 625 F.2d 125, 127–29 (6th Cir.1980).

Section 455(a) requires recusal if the judge's impartiality might reasonably be questioned. 28 U.S.C. § 455(a); *Pepsico, Inc. v. McMillen,* 764 F.2d 458 (7th Cir. 1985). The association between Judge Leighton and Mr. Jones in 1958 was ancient history and insufficient to support a recusal motion.

## CONCLUSION

We affirm the dismissal of counts I, V and VI on res judicata grounds. We affirm the dismissal of count III for failure to state a claim. We remand counts II and IV to the district court to rule first on the several other grounds raised in the District's summary judgment motion.

Judge Leighton has dealt with this complicated case in an admirable fashion. We affirm his dismissal of plaintiffs' recusal motions.

This case has been in the court system since June 27, 1979. In the interests of bringing it to an end and decreasing the costs to the parties and the courts, we retain jurisdiction during this remand. After final orders are entered below, this case will be resubmitted to this court and panel without oral argument. Leave will be granted to file briefs within three weeks after the record is certified to us. *See Grano v. Department of Development of City of Columbus,* 637 F.2d 1073, 1082 (6th Cir.1980).

Affirmed in Part and Reversed in Part.